## Cowan, Appellant, *v.* Bunting Glider Co. et al.

Argued October 9, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Lewis Tanner Moore,* for appellant.

*George D. Sheehan,* with him *J. Paul Erwin,* for appellees.

OPINION BY RENO, J., October 30, 1946:

Claimant instituted this workmen's compensation proceeding for injuries sustained while in defendant's employment and upon its premises. The referee found for claimant, and awarded compensation. Upon appeal, the board reversed the referee, and claimant appealed to the court below. While the appeal was pending, the board, pursuant to the Workmen's Compensation Act, §426, 77 PS §871, ordered a rehearing, and this time the referee found for defendant. On appeal the board reversed the referee, and awarded compensation. Defendant then appealed to the court below which reversed the board and entered judgment for the defendant. This appeal by claimant followed.

On October 28, 1942, claimant, who was employed in defendant's "dipping department", received permission from his foreman to go to the men's room. Before he left his station he washed his hands in naphtha in an effort to remove paint from them. Upon arriving at the men's room, some three hundred feet from his station, he struck a match preparatory to lighting a cigarette, his sweater caught fire and he was severely burned, losing the industrial use of his right hand.

These facts are not disputed, and the case presents only one controverted question: Was the act of smoking

such a violation of the employer's direct and positive order as to take claimant out of the course of his employment and thereby preclude him from compensation?

The record shows that defendant had promulgated a general rule forbidding smoking and had placed "No Smoking" signs at various points in the plant. However, it does not appear that such a sign was continuously displayed in the men's room during claimant's term of employment; or that he was advised that the "no smoking rule" was applicable to the entire plant in general, or to the men's room specifically. There is evidence to the effect that claimant, on numerous occasions and in the company of others, used the men's room as a smoking rendezvous, and that this practice was known to defendant's supervisory officials.

On the rehearing before the referee the structural plans of the plant were introduced and explained. From them it appeared that the plant comprises several buildings connected by passageways, and that in order to reach the men's room claimant was obliged to pass through several sections of the plant. While considering this evidence, on review, the board deemed it advisable to make a personal visit to the plant in order to further familiarize itself with the plant's physical layout. While there it observed that the floor of the men's room was littered with cigarette butts, and, partly, perhaps mainly on that ground, the board found that the company had condoned smoking, at least in the men's room.

This, the court below properly condemned because the personal observations of the board were not buttressed by evidence introduced into the record, and because they related to a time too remote from the date of the accident.

Triers of fact, be they judges, jurors, viewers, board or commissions, may always visit and inspect the locus in quo to secure a better understanding of the evidence and to enable them to determine the relative weight of conflicting testimony. But a view cannot replace testimony; the visual observations of the trier cannot be sub-

stituted for testimony; and the only legitimate purpose of an inspection is to illustrate the evidence and provide a base for understanding and comprehending testimony upon the record. When the arbiter becomes a witness without testifying, the purpose of the view is prostituted. *Flowers v. Balto. & Phila. R. R. Co.,* 132 Pa. 524, 19 A. 274; *Hoffman v. Bloomsburg & Sullivan R. R. Co.,* 143 Pa. 503, 22 A. 823; *Roberts v. Phila.,* 239 Pa. 339, 86 A. 926; *Wadsworth v. Manufacturer's Water Co.,* 256 Pa. 106, 100 A. 577; *Harton's Estate,* 331 Pa. 507, 1 A. 2d 292.

It is not an answer to point to the provision of the statute which exempts workmen's compensation proceedings from adherence to "technical rules of evidence in conducting any hearing or investigation", Act, §422, 77 PS §834. The privilege to confront witnesses, to cross-examine them, to refute them, and to have a record of their testimony is not a mere technical rule. It is a fundamental right, without which the prime essentials of a fair trial, according to Anglo-American standards of justice, are not preserved. The board, not less than the courts, must obey the indispensable basic mandates of our jurisprudence.

But we do not agree with the court below that, with the personal observations of the board eliminated, there is a total lack of evidence to support claimant's case. There is some evidence, at least more than a mere scintilla, tending to prove the allegation of condonation. In view of our disposition of the appeal, we must refrain from discussing its sufficiency or competency. Unhappily, we do not have a finding based exclusively upon evidence in the record, and we have concluded that, in the interest of justice, the case should be returned to the board not only for findings based upon competent evidence but to take further and additional testimony in a hearing de novo.

The judgment is vacated, and the record is remitted to the court below with direction to remand it to the board for further proceedings consistent with this opinion.